**Earl PRINCE et al., Appellants,**

v.

**Everett C. LeVAN and Vivian LeVan, Appellees.**

**No. 1184.**

Supreme Court of Alaska.

July 9, 1971.

Michael M. Holmes, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellants.

Thomas P. Blanton, of Robertson, Monagle, Eastaugh, Annis & Bradley, Juneau, for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ and ERWIN, JJ.

## OPINION

BONEY, Chief Justice.

The appellants, Earl Prince, Justin V. Fager, and John Steinbeck, were defendants below. They seek reversal of a superior court judgment granting rescission of a sale of a vessel, the CHARBUS, to the appellees who were plaintiffs below. In the interest of clarity, the parties on appeal will be designated in accordance with their respective relationships at trial.

Defendants were joint owners of the CHARBUS, a registered vessel of the United States. Defendants sold the CHARBUS to plaintiffs for $10,000 on May 8, 1968. Defendants executed the bill of sale in exchange for $3,000 cash and a promissory note for $7,000. The promissory note was secured by a marine mortgage, executed by plaintiffs in favor of defendants on May 8, 1968, the date of the sale. Under the terms of the marine mortgage, plaintiffs were required to obtain insurance coverage on the CHARBUS. This insurance inured to the benefit of defendants as security for the marine mortgage held by them.

Prior to the sale, the defendants had carried marine hull insurance with a $500 deductible clause on the CHARBUS. The annual premium was $825.00. This insurance coverage expired on May 6, 1968, two days before the sale. The parties both concede that at the time of the sale they believed adequate insurance coverage could be obtained on the CHARBUS. However, following the sale, the plaintiffs experienced considerable difficulty in obtaining what they considered to be satisfactory insurance, and although they did receive one offer of comparatively less adequate coverage which was subsequently withdrawn, they failed to insure. Defendants, as holders of the marine mortgage, continued to demand that the required coverage be obtained until at least August 28, 1968. Plaintiffs did not assert impossibility as a defense to the demand that they insure. However, in October of 1968, plaintiffs com-

menced the present action seeking rescission of the sale on two grounds.

As a first ground for relief, plaintiffs claimed that defendants had expressly warranted the condition of the engine of the CHARBUS, and that subsequent difficulties entitled them to rescission. However, the trial court found that plaintiffs had knowledge of the condition of the engine, and that subsequent difficulties did not amount to a breach of warranty. This finding is not contested on appeal.

Plaintiffs' second ground for relief prevailed, and forms the basis of the present appeal. Plaintiffs contended that the sale was conditioned on the CHARBUS being insurable as required by the marine mortgage, that the vessel was not insurable, and that they were entitled to a rescission of the sale. Defendants denied the vessel was not insurable and denied that insurability was a condition of the sale.

The trial court heard the evidence on the question of insurability and concluded that the CHARBUS was not insurable. In addition, the court found that because of the lack of available insurance, the CHARBUS was not usable as a commercial fishing vessel as the parties had intended. However, the court did not find that insurability was a condition of the sale.

Based upon these findings, the trial court decided that there was a mutual mistake of fact as to the insurability of the CHARBUS. In addition, the court concluded that the unavailability of insurance rendered performance of the insurance terms of the marine mortgage impossible, and that the impossibility of performance of the mortgage terms rendered the CHARBUS commercially useless so that the plaintiffs suffered both a frustration of purpose and a failure of consideration. Based upon these findings of fact and conclusions of law, the court determined that the plaintiffs were entitled to rescission of the sale. Judgment was entered accordingly on July 30, 1969. From that judgment, defendants have brought this appeal.

On appeal, defendants make three basic contentions. First, they assert that the trial court erred in finding, as a fact, that insurance coverage was not available on the CHARBUS. Second, they claim that the trial court erred in finding, as a fact, that the lack of available insurance rendered the CHARBUS useless as a commercial vessel. Third, it is contended that even if the CHARBUS was in fact uninsurable, the trial court erred in concluding that rescission was available under the applicable law.

While defendants' first contention, that the CHARBUS was in fact insurable, may have considerable merit in light of the fact that one offer of coverage was obtained, we find it unnecessary to reach this issue. For even assuming, for purposes of analysis, that insurance was not available on the CHARBUS, we have concluded that rescission was not available under the applicable law.

Defendants' second contention, that the CHARBUS was not rendered commercially useless by uninsurability, will be discussed in its turn, in relation to the applicable law. We turn now to a consideration of the dispositive issues of law.

In their brief, defendants point out that the trial court decided this case without reference to the Uniform Commercial Code. The trial judge relied instead upon general principles of contract law which defendants assert was improper. The first question confronting us is whether the code is applicable to the sale of a vessel, and if it is, whether reliance upon general contract principles alone, to the exclusion of the code, was improper.

■ Alaska Statutes, title 45, Trade and Commerce, adopts Article 2 of the Uniform Commercial Code [1] as the applicable law of sales in Alaska.[2] It is this article which concerns us here. AS 45.05.038 provides

1. AS 45.05.002 provides:
   This chapter shall be known and may be cited as the Uniform Commercial Code. ■

2. AS 45.05.036 provides:
   Sections 36–242 of this chapter shall be known and may be cited as Uniform Commercial Code—Sales.

that the sales article shall "apply to transactions in goods." AS 45.05.044(a) defines goods:

> *"Goods" means all things* (including specially manufactured goods) *which are movable at the time of identification to the contract for sale* other than the money in which the price is to be paid, investment securities (§§ 612–688) and things in action. (Emphasis supplied.)

By the plain meaning of the words of the statute, a vessel is covered.[3] Moreover, the official code comment makes it explicit that "[t]he definition of goods is based on the concept of movability * * *."[4] and it is self evident that a vessel is within that definition and concept. We conclude that the code was applicable to the sale of the CHARBUS.

We turn now to a consideration of whether the trial court erred in attempting to apply general contract principles to the total exclusion of the code.

Defendants contend that the Uniform Commercial Code provided the exclusive basis for a remedy in this case. Plaintiffs respond by asserting that the trial court was authorized to rely upon basic contract principles by AS 45.05.006, which provides:

> Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause supplement its provisions.

Under this provision the principles of equity, including mistake, misrepresentation, and other invalidating grounds "supplement" the code provisions and apply "unless displaced by the particular provision of this chapter". It appears then, that general principles of contract law remain in effect, to some extent, under the code.[5] Nevertheless, even when general principles remain operative, they merely supplement the code; they do not displace it so as to exclude application of its specific provisions where relevant.

Where both the code and general principles are available, the former should always be considered and applied if applicable. By legislative declaration the code is the law, and if general principles appear inconsistent, they must be considered displaced under AS 45.05.006. Moreover, even where inconsistency does not exist, the code must be regarded as supreme; general principles even when consistent with the code are merely supplementary.

Specific code provisions were available to deal with the present case; they should have been applied. We proceed to do so.[6]

At the outset, it should be noted that the code does not employ the term "rescission", a word with numerous non-code meanings, in establishing a buyer's remedial courses of action for a seller's default.[7] Other remedies are provided, however, by AS 45.05.214 and AS 45.05.220.

---

3. "Goods" has been held to have a broad meaning under the code and to embrace any species of property which is not real estate, choses in action, or investment securities, and the like. Buckley v. New York Post Corp., 260 F.Supp. 282 (D. Conn.1966), rev'd on other grounds, 373 F.2d 175 (2nd Cir. 1967). In a sale somewhat similar to the present one, the term "goods" has been held to include an airplane. Security Nat'l Bank v. General Motors Corp., 345 Mass. 434, 187 N.E.2d 820 (1963).

4. 1 R. Anderson, Uniform Commercial Code § 2–105:1, at 223 (2d ed. 1970).

5. Authority indicates that "[t]he principles of contract law continue under the Code." 1 R. Anderson, Uniform Commercial Code § 1–103:18, at 25 & cases cited n. 3 (2d ed. 1970). *See* Braund, Inc. v. White, 486 P.2d 50 (Alaska, 1971).

6. In applying the UCC to this case, we do not intend to imply that general contract principles properly applied, would lead to an opposite result. We elect, instead, not to determine specifically the propriety of the application made of those principles.

7. *See* R. Nordstrom, Law of Sales §§ 143, 146 (1970).

■ AS 45.05.214 applies when a buyer rightfully rejects[8] or revokes acceptance[9] of non-conforming goods; under paragraph (a) of this provision "cancellation" of the contract and restitution of "so much of the price as has been paid" is available.[10] This remedy is, in effect, one form of rescission, and a notice of rescission may be given effect as a revocation of acceptance and a cancellation, thus giving effect to the intent of the buyer to terminate the contract within the terminology of the code.[11]

■ The remedies available under AS 45.05.220 are to be distinguished from the rescission type remedy provided by AS 45.05.214. The former applies when a buyer neither rejects nor revokes acceptance of non-conforming goods, but seeks instead to accept them and recover damages for the nonconformity.[12] Under this provision, a buyer who has accepted goods under AS 45.05.172(a)[13] has no remedy at all unless he notifies the sellers of breach within a reasonable time as required by AS 45.05.174 (c) (1).[14] If proper notification is given following acceptance, damages but not cancellation is the proper remedy.

■ Returning now to the facts of this case and treating plaintiffs' attempted rescission as an effort to revoke acceptance and cancel the contract, we have concluded that the remedies provided by AS 45.05.214 are not available. Moreover, we have concluded that if plaintiffs are considered to have accepted the CHARBUS, and to be

8. AS 45.05.162 provides in part:
   [U]nless otherwise agreed * * * if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may
   (1) reject the whole * * *.
   AS 45.05.164(a) provides:
   Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

9. AS 45.05.176 provides:
   (a) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
   (1) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
   (2) without discovery of the nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
   (b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before a substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
   (c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

10. AS 45.05.214(a) provides in part:
    If * * * the buyer rightfully rejects or justifiably revokes acceptance,

then, with respect to goods involved and with respect to the whole if the breach goes to the whole contract (§ 184), the buyer may cancel and, whether or not he has done so, may, in addition to recovering so much of the price as has been paid * * *.

11. 2 R. Anderson, Uniform Commercial Code § 2–711:19 (2d ed. 1970). For a case so holding, see Lanners v. Whitney, 247 Or. 223, 428 P.2d 398, 403 (1967).

12. 2 R. Anderson, Uniform Commercial Code § 2–714:3 (2d ed. 1970).

13. AS 45.05.172(a) provides:
    Acceptance of goods occurs when the buyer,
    (1) after a reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;
    (2) fails to make an effective rejection (§ 164), but this acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
    (3) does an act inconsistent with the seller's ownership but if this act is wrongful as against the seller it is an acceptance only if ratified by him.

14. AS 45.05.174(c) (1) provides:
    the buyer must, within a reasonable time after he discovers or should have discovered a breach, notify the seller of the breach or be barred from any remedy * * *.

seeking damages, the remedies provided by AS 45.05.220 are not available.

We are compelled to reach this decision because a review of the record convinces us that the CHARBUS may not be viewed as a non-conforming good.[15]

In reaching this conclusion, we accept arguendo that the CHARBUS was not insurable. This fact is not, however, dispositive. For the trial court did not find and the record does not reveal any express warranty of insurability by defendants. If then, a warranty of insurability is to be found, it must be implied.

Under the code, two forms of warranty may commonly be implied. The first of these arises under AS 45.05.096, and is known as a warranty of merchantability: it includes a warranty that the goods are fit for ordinary purposes for which such goods are used.[16] However, under AS 45.-05.496(a) a warranty of merchantability is implied only "if the seller is a merchant with respect to goods of that kind." AS 45.05.042(a) defines merchant:

> "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the prac-

tices or goods involved in the transaction * * *.

In the present case we deal with a single isolated transaction. Defendants were not shown to deal in vessels or to possess peculiar knowledge or skill in relation to vessels. Defendants were therefore not merchants and a warranty of merchantability may not be implied.

A second implied warranty may arise under AS 45.05.098.[17] It includes as an element a warranty of fitness for a *particular* purpose as distinguished from *ordinary* purposes under the warranty of merchantability. It is not, by its terms, restricted only to merchants. It applies to a seller, whether or not he is a merchant, who "at the time of contracting has reason to know a particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods * * *."

At trial, the judge found, as a fact, that the CHARBUS was not useful as a commercial fishing vessel because of its uninsurability. If this finding, which is challenged on appeal, is correct, and if it had been shown that defendants knew of plaintiffs' intended use, and that plaintiffs re-

---

15. AS 45.05.046(b) provides:
    Goods * * * are "conforming" or conform to the contract when they are in accordance with the obligations under the contract.

16. AS 45.05.096 provides:
    (a) Unless excluded or modified (§ 100), a warrant that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
    (b) Goods to be merchantable must at least
    (1) pass without objection in the trade under the contract description;
    (2) in the case of fungible goods, be of fair average quality within the description;
    (3) be fit for the ordinary purposes for which the goods are used;

(4) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved;
    (5) be adequately contained, packaged, and labeled as the agreement requires; and
    (6) conform to the promises or affirmations of fact made on the container or label.
    (c) Unless excluded or modified (§ 100), other implied warranties may arise from course of dealing or usage of trade.

17. AS 45.05.098 provides:
    If the seller at the time of contracting has reason to know a particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under § 100 of this chapter, an implied warranty that the goods shall be fit for that purpose..

lied upon defendants' skill or knowledge, a warranty might be implied. However, while the record indicates that the defendants knew of plaintiffs' intended commercial use, the record does not reveal that the defendants possessed special knowledge or skill which plaintiffs relied upon. The record reveals quite the opposite; it shows instead that plaintiffs were the ones possessing peculiar skill and knowledge of commercial fishing requirements. It therefore appears that a warranty of fitness for a particular purpose may not be implied. However, the question of whether a warranty of fitness may be implied is not crucial, in this case, for a review of the record convinces us that the CHARBUS was fit for commercial fishing.

The trial court found as a fact:

The lack of available insurance rendered performance of the mortgage executed by the plaintiff impossible, and frustrated so completely the purposes for which the vessel was intended, that the plaintiffs were unable to utilize the vessel in their commercial fishing and crabbing operation.

Defendants have challenged this finding contending that it was clearly erroneous. Our review of the record has convinced us defendants' contention is correct.

■ Under Alaska Civil Rule 52(a),[18] this court will not set aside a trial court's finding of fact unless it is clearly erroneous. Under this court's interpretation of Civil Rule 52(a), a finding is not clearly erroneous unless on the whole record we are left with a definite and firm conviction that a mistake has been committed.[19] Having examined the facts of this case, we are convinced that the trial judge was clearly mistaken in finding, as a fact, that the lack of available insurance rendered the CHARBUS useless as a commercial fishing vessel. Our conviction that a mistake has

been made establishes that the trial court's finding of fact was clearly erroneous and, in the context of this case, requires reversal.

The evidence adduced at trial indicates that insurability was not a prerequisite to the operation of a commercial fishing vessel. No evidence of any law, regulation, or other rule prohibiting the use of a commercial fishing vessel without insurance was put forward. Plaintiffs, in fact, made some minimal use of the CHARBUS for commercial fishing purposes. The parties' mutual insurance agent, Mr. Baker, testified that because of the restricted insurance market for older vessels, it was common for fishing vessels to be operated without insurance in Southeastern Alaska. Our review of the evidence convinces us that there was a lack of sufficient evidence to support the trial court's finding of fact.

When one considers the basis on which plaintiffs contend the CHARBUS was commercially useless, the cause of the trial court's error is apparent. That error stems not from a misunderstanding of the facts but from a misunderstanding of the law. There is considerable testimony in the record which seems to indicate that the plaintiffs based their belief that the CHARBUS was not commercially useful on their understanding of the marine mortgage. It must be remembered that the marine mortgage required plaintiffs to obtain insurance on the CHARBUS which would be acceptable to the defendants who desired insurance as a form of security for the mortgage. A review of the whole record leaves the distinct impression that the plaintiffs felt that the CHARBUS could not be used commercially because the terms of the marine mortgage had been breached by their own failure to insure. The trial court's challenged finding of fact on commercial utility, by emphasizing the impossibility of performance of the insurance terms of the mortgage, in-

---

18. Alaska R.Civ.P. 52(a) provides in part: Findings of fact shall not be set aside unless clearly erroneous * * *.

19. Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co., 482 P.2d 842 (Alaska 1971).

dicates apparent agreement with plaintiffs' belief.

In their brief plaintiffs argue that the inability to insure the CHARBUS made the vessel commercially useless and justified rescission. They point out that a lack of available insurance caused them to breach the terms of the marine mortgage and left them continually exposed to the threat of foreclosure. They point out that as recently as August 28, 1968, the defendants were demanding that the required coverage be obtained. Plaintiffs seem to contend that because they were in breach of the mortgage terms they could not use the vessel commercially. This reasoning is faulty. While it is true that plaintiffs were in breach of the mortgage contract, it is difficult to ascertain how commercial use of the vessel could have placed them in further breach. The breach existed when the plaintiffs failed to insure whether or not they made actual commercial use of the vessel.

Granting that plaintiffs were faced with threatened foreclosure for failure to insure, factual impossibility will excuse a party from performing the impossible terms of a contract.[20] Moreover, plaintiffs may not rely upon their inability to perform one part of their bargain to excuse performance of the remainder where the performance remaining was not made materially more difficult by the impossibility.[21] If defendants had attempted to foreclose, plaintiffs' breach would have been excused by impossibility. Plaintiffs were, then, free to use the CHARBUS commercially in spite of their failure to insure. This being true, the trial court was mistaken in finding, as a fact, that the CHARBUS was commercially useless.

Our conviction that a mistake has been committed renders the trial court's finding clearly erroneous under the standard of Civil Rule 52(a) and requires reversal. In the context of this case, a remedy is not available absent a showing of commercial non-utility. As we have indicated, no express warranty of insurability appears, nor may an implied warranty of merchantability be found since defendants were not shown to be merchants. We have also expressed the view that the proof of reliance by plaintiffs necessary for implying a warranty of fitness for a particular purpose was not made so that a warranty could not be implied. Moreover, even if a warranty of fitness were implied, our reversal of the trial court's finding on utility indicates that the vessel was not unfit. There is then, no basis upon which plaintiffs might revoke their acceptance and seek cancellation under AS 45.05.214.

Viewing the case as a whole, plaintiffs received and accepted the vessel for which they bargained. When plaintiffs discovered and notified defendants of their inability to insure the CHARBUS, impossibility excused further performance. Plaintiffs were free to use the CHARBUS. Defendants, for whose benefit insurance was required under the mortgage, may have been damaged; plaintiffs were not. Any harm suffered by plaintiffs resulted from their own misunderstanding of the law which resulted in their failing to use the CHARBUS when they might have done so.

Plaintiffs lack a remedy under AS 45.05.-220 for the simple reason that they have failed to prove any damages suffered as a result of the uninsurability of the CHARBUS.

The judgment is reversed, and the case remanded with directions that judgment be entered for the defendants.

CONNOR, J., not participating.

---

20. Restatement of Contracts § 456 (1932).

21. Restatement of Contracts § 463 (1932).