443 So.2d 23 (1983)
J.R. VINCE
v.
J.D. BROOME.
No. 53919.
Supreme Court of Mississippi.
December 14, 1983.
*24 Keith Starrett, Magnolia, for appellant.
James H.C. Thomas, Jr., Hattiesburg, for appellee.
Before BROOM, DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
Plaintiff J.R. Vince, the purchaser of cattle, sued J.D. Broome, the seller of the cattle and the stockyard through which the cattle were sold, Southeast Mississippi Livestock Farmers Association, for breach of implied warranty of merchantability of the cattle under Uniform Commercial Code. From a jury verdict for $2,640.23 in favor of the plaintiff in the County Court of Forrest County, the defendant seller appealed. The circuit court reversed holding that the Uniform Commercial Code did not apply to a sale of livestock and that the county court erred in submitting to the jury the factual determination of the merchant status of a farmer. The reversal of the judgment of the county court gave rise to this appeal.
The question for determination here is whether a farmer selling cattle through the stockyard was a merchant under Mississippi Code Annotated section 75-2-314 (1972) at the time this action arose.[1]

*25 I.
On May 19, 1980, J.R. Vince purchased fifteen head of cattle at a cattle auction barn owned and operated by the Southeast Mississippi Livestock Farmers Association (Stockyard). Vince was an order buyer and as such, purchased cattle for resale to feed lot operations. After purchasing these cattle, Vince transported them some sixty miles to his farm and unloaded them. During transfer and shortly afterwards the cattle became ill. Five of them died and five others lost a great amount of weight from illness.
On the day of the purchase Vince notified Jack Minter, the manager of the Stockyard, of his sick and dead cattle. J.D. Broome, the seller of the cattle, was also notified. Broome admitted that prior to taking the cattle to the sale, some of his cows had accidentally gotten into his feed lot and had overeaten. The veterinarian who treated the cattle verified that they were suffering from a toxic condition caused by overeating.
This lawsuit alleged that by selling cattle that were sick at the time of the sale, J.D. Broome breached the implied warranty of merchantability under the Uniform Commercial Code under section 75-2-314. Although suit was brought against both the seller and the stockyard, the trial court sustained a motion for directed verdict as to the stockyard.[2]

II.
Initially, this case addresses the merchant status of a farmer and raises for this Court's first consideration the question of whether our Uniform Commercial Code exempts farmers from the application of the entire Code.
We look to legislative history for answers to questions of such import where the enactment of such provides a guideline. Here, however, our original legislative history provides no enlightenment as to whether the question was even anticipated. From a study of the Code, we find no exemption of farmers as a merchant class.
However, subsequent to the original enactment of the Uniform Commercial Code on July 1, 1981, the legislature did amend one section of the Code, section 75-2-314, to exclude the sale of cattle, hogs, and sheep from the implied warranty of merchantability. Inferentially by this action the legislature acknowledged that a farmer may factually in a particular case be considered a "merchant" under the Code definition (section 75-2-104), but the legislature did not exclude farmers as a merchant class from the definition under section 75-2-104.
We are compelled to note that some farming operations are worth millions of dollars. These farmers are engaged in multicommercial transactions and are generally considered to be agribusiness persons. It would stretch the imagination to conclude that all these operations were exempt from coverage under the Commercial Code.
On the other hand, some farming operations are performed by such casual and inexperienced sellers that they would not be included within the merchant definition.
Therefore, this Court concludes that farmers as an occupation may be a merchant class where their particular factual situation falls into the definition of merchant as defined in Mississippi Code Annotated section 75-2-104.

III.
Having determined that farmers may be a merchant class within the provisions of the Uniform Commercial Code, we next address this particular lawsuit involving an alleged breach of an implied warranty under *26 section 75-2-314 where "goods" were sold by a "merchant."
There are five elements which a plaintiff must prove to recover under section 75-2-314: (1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury. See, White and Summers, Uniform Commercial Code § 9-6 (1980).
Reference to several pertinent sections of Mississippi Uniform Commercial Code sections 75-1-101 (1972) et seq., is in order.
"`Goods' means all things ... which are movable at the time of identification to the contract for sale other than money ..., investment securities. `Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty... ." Miss. Code Ann. § 75-2-105 (1972). Therefore, this Court concludes that livestock are "goods" within the definition of the Uniform Commercial Code and are covered under the law governing commercial transactions.[3]
When a sale of goods is made, there is an implied warranty[4] that the goods are merchantable if the seller is a "merchant with respect to goods of that kind." This implied warranty provision is contained in Mississippi Code Annotated section 75-2-314 (1972).
Implied Warranty: merchantability; useage of trade.
(1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. .. . (Emphasis added).
The defendant Broome does not question here that the plaintiff proved the above last four elements necessary for recovery. Nor is issue raised that cattle are not "goods" as defined in Mississippi Code Annotated § 75-2-105(1), or that a contract for sale existed.
The only disputed element here is whether Broome under the particular factual situation here was a "merchant with respect to goods of that kind" (cattle), under section 75-2-314 Mississippi Code Annotated (1972). If he is not a "merchant with respect to goods of that kind," he does not give the section 75-2-314 implied warranty of merchantability.
At the outset, we observe that the merchant definition needs addressing. A merchant is defined under Mississippi Code Annotated section 75-2-104 (1972), as:
A person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill. (Emphasis added).
Note that in suits on implied warranty under section 75-2-314, such as here, the definition of "merchant" is more limited than the general definition contained in section 75-2-104. Siemen v. Alden, 34 Ill. App.3d 961, 341 N.E.2d 713 (1975), states: "[T]he definition of merchant within § 2-314 is a narrow one and that the warranty of merchantability is applicable only to a person who, in a professional status, sells the particular kind of goods *27 giving rise to the warranty." There is an implied warranty only when a seller is a "merchant with respect to goods of that kind." The other definitions of merchants contained in section 75-2-104 do not apply to implied warranty suits.

IV.
Broome, who had been in the cattle business for twenty years, owned approximately 2,000 head of cattle, and annually sold about 1,000 head. He operated a feed lot operation, feeding and fattening cattle for sale to meat packing plants for slaughter. This activity of selling to slaughter houses comprised approximately 90 percent of his business. Only occasionally did he sell cattle in the manner in which he sold them to Vince through the auction barn. Other businesses operated by Broome include a Case tractor dealership, bowling lanes, and a construction operation. Broome claimed the construction business to be his main occupation; however, cattle farming was a major part of his business according to his testimony.
Broome's argument that he is not a merchant is two-fold. First, he states that 80 to 85 percent of his time is occupied in businesses other than his cattle operation. Secondly, of that portion of his time contributable to his cattle operation, Broome stated 90 percent of his operation is raising cattle for slaughter and not raising cattle for resale through a stockbarn.
Mr. Broome relies on Loeb v. Schreiner, 294 Ala. 722, 321 So.2d 199 (1975) for the proposition that a farmer is not a merchant. The Alabama Court opined that since the farmer in that case never "sold anyone's cotton but his own", then "[H]e was nothing more than an astute farmer selling his own product." Therefore, he was not a merchant. Id., 321 So.2d at 202.
A case most similar to the instant case is Bennett v. Jansma, 329 N.W.2d 134 (S.D. 1983), where a cattleman regularly dealt in cattle transactions and employed an intermediary auctioneer to sell cattle. The South Dakota Court determined that the cattleman was a merchant with respect to goods of that kind under Uniform Commercial Code provisions.
A contrary conclusion was reached factually in Fear Ranches, Inc. v. Berry, 470 F.2d 905 (10th Cir.1972). A farmer, selling his cattle under a forced sale because of financial difficulties, was not found to be a merchant who dealt in goods of that kind when he made a single isolated sale to a nonpacker. He had generally sold his cattle to packing houses. Also see Prince v. LeVan, 486 P.2d 959, 9 U.C.C. Reporting Service 367 (Alaska 1971); Donald v. City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92 (1976).

V.
Applying the Uniform Commercial Code to the facts of this case for analysis, we conclude that Broome has dealt with raising and selling cattle regularly for twenty years.
To have grown from a small business twenty years ago to one that owned 2,000 head, impliedly shows regular dealing in cattle raising and selling. Additionally, in response to the question, "You are an experienced cattleman, are you not, sir?" Broome answered, "Well, reasonably so, yes, sir." The reasoning that Broome asserts that he is not a merchant because he only sells what he raises and that he has no knowledge or skill peculiar to selling cattle through a livestock sale, is not acceptable to us under these facts.
[I]t is not the kind of business that makes a merchant a merchant, but rather it is the status of the person to the merchandise which is sold that assists in arriving at a conclusion as to whether or not a person is a merchant. (Squillante, Is He Or Isn't He A Merchant?  The Farmer, 82 Comm.L.J. 155 (1977).
Nor is it logical to draw a distinction between cattle sold for slaughter and cattle sold to feed lots for resale. He must only deal in goods of the kind involved in the transaction.
Additionally, the fact that Broome had multibusinesses makes him no less a professional *28 cattleman. Whether he deals in other goods, as here, is immaterial.
We emphasize that each case is determined individually, based upon its particular factual situation. A cattle farmer is a merchant only if he fits within the definition of a merchant with respect to goods of that kind. Each case will be decided on its own facts.
We hold that Broome's cattle operation was of sufficient size, extent, and duration that he was an experienced cattleman and a knowledgeable seller. He dealt with goods (cattle) of a kind, and had expertise peculiar to cattle transactions. We conclude that under the facts of this case Broome was a "merchant dealing in goods of that kind" (cattle) and that an implied warranty of merchantability arose from the sale of cattle.

VI.
The second assignment of error addresses the county court's submission of the factual issue of the defendant's merchant status to the jury. The question presented for our determination is whether the merchant status of a farmer is a question of fact for the triers of the facts or a question of law for the court.
Questions of facts are for the jury's determination. However, when the jury is faced with no reasonable alternative to these facts and no reasonable minds can draw any different conclusion, then the question becomes one of law. The Court then instructs the jury as to that legal conclusion. Sand Seed Service, Inc. v. Poeckes, 249 N.W.2d 663 (Iowa 1977).
Paraphrasing a recent decision of this Court, we stated whether there exists circumstances alleged to constitute [merchant status] is a question of fact for the jury's determination. But whether supposing them to be true, as alleged, they establish [one to be a merchant], is a question to be decided by the court. It is error to refer the determination of whether [one is a merchant] to the jury without declaring to them the principles by which they must be governed in determining that question. Owens v. Kroger Co., 430 So.2d 843 (Miss. 1983); Whitfield v. Westbrook, 40 Miss. 311 (1866); Greenwade v. Mills, 31 Miss. 464 (1856).
We conclude that the county court did not err in submitting the factual question to the jury for its determination upon proper instruction. The court's instruction of the statutory definition of a merchant under section 75-2-104 was given to the jury for it to analyze with the testimony to determine the ultimate question. The ultimate question of whether a person comes within the definition of merchant is a mixed question of law and fact. We find no error in this assignment.
We hold, therefore, that the opinion of the circuit court is reversed and the judgment of the county court of Forrest County is reinstated.
REVERSED AND JUDGMENT OF COUNTY COURT REINSTATED.
PATTERSON, C.J., and BOWLING, HAWKINS and ROBERTSON, JJ., concur.
BROOM and WALKER, P. JJ., and ROY NOBLE LEE and DAN M. LEE, JJ., dissent.
BROOM, Presiding Justice, dissenting:
Views set forth in the majority opinion appear to be a misapplication of Mississippi Code Annotated § 75-2-314 (1972). Therefore, although with deference, I must dissent.
Analysis of § 75-2-314, supra, shows that "farmers" are not mentioned or in any manner defined. The majority opinion states that an amendment to § 75-2-314, enacted subsequent to the accrual of the present action somehow "inferentially" places farmers within the scope of our Uniform Commercial Code. Such a construction is simply lacking of logic.
The majority "concludes that farmers as an occupation" fall within the definition of "merchant" and cites Mississippi Code Annotated § 75-2-104 (1972). Such a conclusion is reached without referring to any *29 mention of "farmers" within any part of the U.C.C. Apparently hereafter a "farmer" in Mississippi is to be governed by the same laws as that of merchants, such as car dealers, retail establishments of all kinds, and "commercial" operations of most varieties. It follows that most farmers should immediately enroll in a law school or employ regularly retained counsel who have expertise in and a deep understanding of "commercial law" now codified as our Uniform Commercial Code. To put such a burden on Mississippi "farmers" is not reasonable or justifiable and was not intended under any cited section of the U.C.C. The very title "Commercial Code" indicates that the U.C.C. was not aimed at farmers.
Our sister states of Alabama and Arkansas, which perhaps are more like Mississippi than any other state, have both declined to hold a farmer to be a merchant, subject to the U.C.C. Pertinent language is the following excerpted from Loeb and Company, Inc. v. Schreiner, 294 Ala. 722, 321 So.2d 199 (1975):
We do not think the framers of the Uniform Commercial Code contemplated that a farmer should be included among those considered to be "merchants."
In order for a farmer to be included within the § 2-104 definition of "merchants," he must do one of the following:
1. deal in goods of the kind;
2. by his occupation hold himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction; or
3. employ an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.
Id. 321 So.2d at 201-02. See also Cook Grains v. Fallis, 239 Ark. 962, 395 S.W.2d 555 (1965).
The present record establishes that the litigant now held by the majority to be "merchant-farmer" spends over 80% of his time in the construction business. His cattle operation is usually as a feeder for slaughter, and ordinarily does not raise cattle for "resale" as he did here in an isolated case. No evidence is pointed out that he ever sold cattle other than cattle which were his own. In this regard, the rationale of Pierson v. Arnst, 33 U.C.C. Rep. 457, 534 F. Supp. 360 (D.C.Mont. 1982), is particularly appealing,
This court is convinced that although a farmer may well possess special knowledge or skills with respect to the production of a particular crop [or livestock], the term "merchant", as used in the Uniform Commercial Code, contemplates special knowledge and skill associated with the marketplace. ... It is inconceivable that the drafters of the Uniform Commercial Code intended to place the average farmer who merely grows his yearly crop [or his livestock] and sells it to the local elevator, etc. on equal footing with the professional commodities dealer whose sole business is the buying and selling of farm commodities.
Id. at 460, 534 F. Supp. at 362 (emphasis added). See also Decatur Cooperative Association v. Urban, 219 Kan. 171, 547 P.2d 323, 18 U.C.C. Rep. 1160, 1167 (1976). Returning to the instant case, the proof clearly shows that Broome possessed no special knowledge or skill of the marketplace. He may very well have possessed special skill with regard to raising the cattle and thus might very well have been a merchant if he was offering his services as a herdsman. But, here he was simply selling the cattle he had raised. It is expertise and professionalism in the buying and selling of cattle that makes a cattle operator a merchant, not expertise and professionalism in the raising of that cattle. According to the proof, Broome is not a "dealer" within general usage of the term.
Mississippi Code Annotated § 75-2-509 (1972) makes it clear that when the seller is not required to ship goods to a buyer, such a buyer assumes the risk of loss. Here it *30 is clear that the buyer received the cattle prior to the loss, negating liability of Broome. Here the cattle became sick by accidental over-feeding. Although the original declaration charged intentional overfeeding, the amended declaration made no such charge. The cattle appeared normal at the sale and the buyer (Plaintiff) made no effort, prior to the auction sale, to ascertain their condition. Manufactured (commercial) goods by their very nature cannot accidentally overfeed or self-destruct, and they are the type articles logically covered by the cited parts of the U.C.C.
For these reasons, I cannot subscribe to the views of the majority opinion.
WALKER, P.J., and ROY NOBLE LEE and DAN M. LEE, JJ., join in this dissent.
NOTES
[1] Mississippi Code Annotated section 75-2-314 was amended to exclude cattle, hogs, and sheep from an implied warranty of merchantability effective July 1, 1981. This action arose on May 19, 1980; therefore, we interpret this statute prior to the amendment.
[2] As to the stockyard that sold the cattle, their written forms state: "note. We are not responsible for sickness or death. We are agents only." No error is assigned as to this action by the county court, nor is it addressed in this appeal.
[3] Likewise, although Article 9 of the Uniform Commercial Code deals with secured transactions, it recognizes that "farm products" may be used as a source of collateral in commercial transactions. Admittedly, however, it does not control the question presented here.
[4] Broome testified that there was no express warranty given, no representation about the cattle as to their intended use or suitability for any purpose. Broome denied knowingly selling sick cattle; he also lost some cattle from the same cause. Section 75-2-314 involves an implied warranty. An express warranty is not required under this section.