602 So.2d 838 (1992)
DAWKINS AND COMPANY
v.
L & L PLANTING COMPANY, Mary H. Love, Executrix of the Estate of James P. Love, Jr., Estate of J.P. Love, Estate of Clyde Gosnell, Love & Love Farms, Inc., J.P.L. Farms, Inc. and Gosnell Farms, Inc.
No. 89-CA-0401.
Supreme Court of Mississippi.
June 17, 1992.
*839 L. Carl Hagwood, and Robert N. Warrington, Campbell DeLong Hagwood & Wade, Greenville, for appellant.
H.D. Brock, Whittington Brock Swayze & Dale, Greenwood, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal arises from an action brought by Dawkins and Company, cotton buyers (Dawkins), against a joint venture doing business as L & L Planting Company (L & L) for damages arising as the result of an alleged breach of a cotton forward contract. L & L denied the existence of a contract, invoked the statute of frauds as an affirmative defense, and subsequent to discovery depositions, filed its motion for summary judgment. The trial court granted summary judgment on the grounds that Dawkins' action was barred by the provisions of Miss. Code Ann. § 75-2-201 (1972) (Statute of Frauds). We reverse and remand.

*840 I.
On February 19, 1987, Dawkins and Company, cotton merchants, filed suit in the Circuit Court of Holmes County against L & L alleging that it contracted with L & L for the forward purchase of L & L's 1986 cotton crop.[1] The complaint alleged that Jim Dawkins, a partner of Dawkins, entered into a contract through J.P. Love (Love), partner of L & L, providing for the purchase by Dawkins of all cotton grown by L & L on its 1,350 cotton acres. Dawkins alleged that in reliance upon the contract, it sold the cotton to third parties in the international cotton market. Dawkins further alleged that L & L breached the contract by refusing to deliver the purchased cotton.
L & L answered, denied an agreement and asserted as an affirmative defense that the alleged contract was unenforceable because it failed to comply with the terms of Miss. Code Ann. § 75-2-201 (1972). L & L alleged, alternatively, that "at the time of the telephone conversation between Jim Dawkins and J.P. Love as alleged in the complaint" Love was hospitalized, suffering from a terminal illness, and was neither physically nor mentally capable of making rational decisions or entering into any agreements. Dawkins responded by amending its complaint to charge L & L with estoppel to plead lack of capacity. The capacity issue was not determinative of the trial court's disposition of the cause and is not an issue on this appeal.
Depositions of J.P. Love, Jr. and Jim Dawkins were taken. Dawkins' deposition stated:
Q In the fall of '86, specifically in August of '86, you have related in your pending lawsuit that on or about August 22, 1986 that J.P. Love, a partner of L & L Planting Company, and Jim Dawkins, a partner of Dawkins & Company, entered into a contract. What are you referring to there? What contract?
A Oral contract for the purchase and sale of his 1986 cotton crop.
Q Would you give me the details of that contract? First of all, how did it come about?
A Mr. Love  I'm going to try to answer your question as I see fit, and if I deviate, you'll have to stop me. Mr. Love usually when he got ready to sell his cotton he would call me. He told me from time to time: "No need in bugging me or bothering me or soliciting my business. When I'm ready to sell, I'll call you." And this was the sort of relationship we cultivated through the years.[2]
And then in late August of '86, Mr. Love called me one morning, I assume long distance, and asked me what we were paying for cotton and I told him. And I asked him if he were in the program or out of the program, because it had a difference as to how the cotton was priced. And I explained to him what I know about the cotton program and what we were paying at that time. And Mr. Love said, "Well, how do I get  Can I gross 60 cents for my cotton?" And I said, "Well, at $10 a bale for middling cotton, which is grade 31, you will come real close to the 60 cents." He said, "Well, you've been handling my cotton for 10 or 15 years. You know I'm going to have a lot of middling cotton." And I said, "Well, maybe this is the kind of contract you want." And he said, "If you can get that close to 60 cents, then you've got my cotton. Consider it sold."
So I read back over it again and he said "Right before I hang up I'm doing business as L & L Planting Company *841 now. All these years you've been buying and making your checks out to J.P. Love & Son. This year it's L & L Planting Company. Be sure you sent [sic] me a contract and be sure you put L & L Planting Company as the seller rather than Dawkins & Company." So that's what we did.
* * * * * *
Q After you completed this conversation with Mr. Love, did you prepare a written contract?
A Yes, sir. What we do, Mr. Brock, is we have what we have an in house purchase confirmation where we write up the terms of the agreement and then we followed it up in this case with a written contract.
Q Are you saying you sent a confirmation on that date promptly?
A We sent a copy of this contract in the mail soon after Mr. Love and I agreed to the terms of his sale.
When the contract was not promptly returned, Dawkins, on August 25, 1986, sent an employee with a copy of the contract to personally visit Love at Tchula to obtain its execution. Love referred the employee to his son, Love, Jr., another partner of the venture, who refused to execute the contract.
On September 3, 1986, Dawkins wrote Love a letter and mailed it to his usual post office address at Route 1, Box 232, Tchula, Mississippi. The letter referred to their contract and requested that the form contract be signed and returned as agreed. Dawkins did not manually sign the letter although his name was typewritten on the bottom of the document which bore his letterhead.
No response was made by L & L to the letter of September 3, 1986.
L & L moved for summary judgment on the grounds that pursuant to Miss. Code Ann. § 75-2-201, the contract was unenforceable. On March 30, 1989, the trial court granted summary judgment after finding from the pleadings and depositions that Dawkins' cause of action is barred by Miss. Code Ann. § 75-2-201.
Dawkins appeals presenting the following dispositive issues:
(1) Did the trial court err in granting Defendants' motion for summary judgment on the grounds that the general statute of frauds (§ 75-2-201) precluded enforcement of an oral contract entered into between Plaintiff and Defendants for the forward sale of Defendants' 1986 cotton crop?
(2) Did the trial court err in not applying the "between merchants" exception to the statute of frauds (MCA § 75-2-201(2)) to the facts of this case?
Other issues are presented, but the stated issues are dispositive of this appeal.

DISCUSSION

Summary Judgment Scope Of Review
It is well settled that a motion for summary judgment challenges the legal sufficiency of all or part of an opponent's case. Webster v. Miss. Publishers Corp., 571 So.2d 946, 948-49 (Miss. 1990); Miss. Moving & Storage Co. v. Western Electric Co., Inc., 498 So.2d 340, 342 (Miss. 1986); Willis v. Miss. Farm Bureau Mutual Insurance Co., 481 So.2d 256, 258 (Miss. 1985); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1984).
The motion lies only where there is no genuine issue as to any material fact. A fact is material if it tends to resolve any of the issues properly raised by the parties. Webb v. Jackson, 583 So.2d 946, 949 (Miss. 1991); Mink v. Andrew Jackson Casualty Insurance Co., 537 So.2d 431, 433 (Miss. 1988) [quoting Miss. Road Supply v. Zurich American Insurance Co., 501 So.2d 412, 414 (Miss. 1987)]. The moving party takes the position that the opponent has no valid claim for relief or defense to the action as the case may be. Brown, 444 So.2d at 362. The evidence before the court must be viewed in the light most favorable to the non-moving party and the non-moving party should be allowed every reasonable doubt. Webb, 583 So.2d at 949. Issues of facts sufficient to require denial of a summary judgment motion are obviously present where one party swears to *842 one version of the matter in issue and another says the opposite. Foldes v. Hancock Bank, 554 So.2d 319, 321 (Miss. 1989) [quoting Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762 (Miss. 1989)]. Generally, summary judgment should be denied where the record is incomplete regarding a material fact. Smith v. Sanders, 485 So.2d 1051, 1054-55 (Miss. 1986). On appeal, we conduct de novo review of the grant or denial of summary judgment. Webb, 583 So.2d at 949; Parham v. Moore, 552 So.2d 121, 122-23 (Miss. 1989); Short v. Columbus Rubber and Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988).

Uniform Commercial Code Rules of Construction
Miss. Code Ann. § 75-1-102 (1972) provides:
(1) This code shall be liberally construed and applied to promote its underlying purposes and policies... .
(2)(a) to simplify, clarify and modernize the law governing commercial transactions;
(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
Miss. Code Ann. § 75-1-106 (1972) provides:
(1) The remedies provided by this code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed ...

Statute of Frauds
Miss. Code Ann. § 75-2-201 (1972) provides:
(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.
Section 75-2-201(2) contains several prerequisites before a merchant can invoke the subsection to satisfy the statute of frauds. The merchant sending the writing ultimately must show that:
(1) both parties are merchants;
(2) the writing was in confirmation of the contract and sufficient against the sender;
(3) the writing was received by the other merchant within a reasonable time after the contract was made;
(4) the merchant receiving the writing had reason to know of its content; and
(5) the merchant receiving the writing did not give written notice of objection within ten (10) days after the receipt. Perdue Farms, Inc. v. Motts, Inc. of Miss., 459 F. Supp. 7, 14 (N.D.Miss. 1978); Doral Hosiery Corporation v. Sav-A-Stop, Inc., 377 F. Supp. 387, 388 (E.D.Pa. 1974); A & G Construction Co. v. Reid Brothers Logging Co., 547 P.2d 1207, 1216 (Alaska 1976).
We note that here, in the context of summary judgment, the burden is on L & L as the moving party to show there is no genuine issue of material fact regarding the applicability of the merchant's exception, and that it does not apply. This burden must be shouldered by L & L notwithstanding that Dawkins would at trial shoulder the burden of proof on this issue. Perdue Farms, 459 F. Supp. at 15.
Dawkins maintains that summary judgment should have been denied because the parties come within the provisions of Miss. Code Ann. § 75-2-201(2), commonly known as the merchant's exception. Dawkins contends *843 that L & L, by the nature and size of its extensive farming operations, are merchants as defined by the Code.
A "merchant" is defined by the Code to include any "person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to who such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Miss. Code Ann. § 75-2-104 (1972).
In Vince v. Broome, 443 So.2d 23, 25, 28 (Miss. 1983), we held that whether a farmer comes within the merchant's exception "is a mixed question of law and fact" dependent largely on the factual circumstances of each case. In Broome, we noted:
Some farming operations are worth millions of dollars. These farmers are engaged in multi-commercial transactions and are generally considered to be agri-business persons. It would stretch the imagination to conclude that all these operations were exempt from coverage under the Commercial Code.
443 So.2d at 25.
L & L was engaged in farming operations of more than 4200 acres of land, and Love, acting on behalf of the entity, marketed its cotton, soybeans, feed grains and cattle. Love was described as a better businessman than farmer, with mental ability to deal with merchants of all types in operating the farm. In 1986, the joint venture produced 2,584 bales of cotton. Undoubtedly, there is a genuine issue of material fact as to whether L & L was a "merchant" as defined by our Commercial Code.
L & L concedes that the "writing" prepared by Dawkins was sent within a reasonable time subsequent to the first telephone conversation. This concession is supported by the record showing Dawkins' employee hand delivered the contract drafted by Dawkins to Love and then, pursuant to instructions, to his son, Love, Jr. The delivery also extracts from L & L the further concession that the proposed contract was received and that L & L had reason to know of its contents.
L & L, while conceding it received the forward contract form on August 25, maintains that Dawkins offered no evidence the letter was received. Dawkins testified the letter was mailed to Love at his usual post office address of Route 1, Box 232, Tchula, Mississippi. This was sufficient to invoke the presumption of receipt arising from the placement of the correctly addressed letter in the custody of the United States Postal authorities. Perdue Farms, 459 F. Supp. at 18-20. On the present record, there is genuine factual dispute over whether Love did receive the letter.
L & L also insists that the record fails to show the writing was in confirmation of the contract and sufficient to bind the sender. L & L does not overlook the fact that Dawkins' letter of September 3 properly referred to the contract but asserts that (a) the September 3 letter was written subsequent to the date Love, Jr. effectively rejected the proposed contract and (b) the letter was not manually signed and therefore was not "sufficient against the sender." We disagree.
If the other provisions of the merchant's exception are met, and Dawkins, by writing "sufficient against the sender," confirmed the contract, then the statutory bar is removed unless L & L gave written notice of objection to its contents within ten days after receipt. L & L concedes it did not give written notice of objection within the prescribed time. A fortiori, the act of Love, Jr. on August 25, in orally rejecting the alleged contract could not suspend or negate subsequent application of § 75-2-201(2) if its prerequisites are otherwise satisfied. A & G Construction Co., Inc. v. Reid Brothers Logging Co., Inc., 547 P.2d at 1216-17; Agrex, Inc. v. Schrant, 221 Neb. 604, 379 N.W.2d 751, 753 (1986).
The added assertion by L & L that the confirmatory writing be manually signed is without legal foundation. Miss. Code Ann. § 75-1-201(46) provides:

*844 "Written" or writing includes printing, typewriting, or any other intentional reduction to tangible form.
Miss. Code Ann. § 75-1-201(39) provides:
"Signed" includes any symbol extended or adopted by a party with present intent to authenticate a writing.
We have not previously considered what constitutes "signed" under the Uniform Commercial Code, but have little trouble concluding that the letter of September 3 on Dawkins' letterhead, bearing his address, which referred to and recited the contract terms, requested execution of the previously delivered forward contract, and included the typewritten name of the sender on the line where a manual signature is usually made, was a sufficient "writing in confirmation of the contract and sufficient against the sender." See In Re Bufkin Brothers, Inc., 757 F.2d 1573, 1577 (5th Cir.1985); Merrill Lynch Pierce, Fenner and Smith, Inc. v. Cole, 189 Conn. 518, 457 A.2d 656, 662-63 (1983) (letterhead or bill head sufficient); Troutt v. Nash AMC-Jeep, Inc., 157 Ga. App. 399, 278 S.E.2d 54, 58 (1981) (completed printed form sufficient); A & G Construction Co., Inc. v. Reid Brothers Logging Co., Inc., 547 P.2d at 1216 (typed name at end of letter sufficient to meet requirements of UCC § 1-201(39)).

CONCLUSION
The trial court erred in granting summary judgment. There are genuine issues of material fact regarding the application of the so-called merchant's exception, notwithstanding that certain prerequisites have either been met by Dawkins or conceded by L & L. This cause is therefore reversed and remanded for further proceedings.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] A forward contract is a method whereby a cotton grower sells the cotton crop prior to harvest and often times prior to planting. The grower has the advantage of knowing the price to be obtained for the crop and the purchaser has the advantage of selling immediately, in large quantities prior to harvest, cotton needed by the mills and factories on a later date.
[2] The record shows that Dawkins purchased cotton from Love from 1973 through 1986. Some of the cotton was purchased by forward contract and the remainder was purchased by spot purchase, i.e., purchased as it was harvested.