## 60926. TROUTT v. NASH AMC/JEEP, INC. et al.

BIRDSONG, Judge.

Partial summary judgment. Virginia Troutt purchased a 1978 AMC Concord in May 1978 from Nash AMC/Jeep, Inc., a dealership in Lawrenceville, Georgia. She entered into an installment sales contract with Nash for payment of the purchase price. At the top of that document the purchaser was denominated as Troutt and the seller as Nash AMC/Jeep, Inc. The document was fully executed by Nash except that the signature of Nash as seller does not appear on the document. It was signed by Troutt. As pertinent to this appeal, paragraph 7 of the installment sales contract provided: "7. It is mutually understood and agreed that: (a) except where the property hereunder is . . . subject to seller's (1) written warranty or (2) service contract entered into at the date of this contract or within 90 days thereafter, there are no implied warranties of merchantability, fitness for a particular purpose or which extend beyond the description of said property on the face hereof. . . ." On its face the sales contract described the car as "new."

Within 30 days of the purchase and acceptance of the Concord, Ms. Troutt experienced multiple mechanical problems involving the braking system, engine overheating, the transmission, the carburetor. And all these defects affected the safe operation of the vehicle. Ms. Troutt brought the vehicle several times to Nash seeking correction of these defects. The vehicle was retained by Nash for work. When Nash sought to return the vehicle to Ms. Troutt on the last occasion, she declined delivery until the car was, in her opinion,

properly repaired. Nash finally demanded that Ms. Troutt accept possession of the car or suffer storage charges. Ms. Troutt brought the present complaint in four counts, alleging wrongful conversion of the vehicle, breach of implied warranty, violation of the Truth-in-Lending Act (15 USC 1602) and violation of Georgia Motor Vehicle Sales Finance Act (Code Ann. §§ 96-1001 et seq.). Nash counterclaimed for storage charges and denied any liability. Nash moved the trial court for partial summary judgment on Count 2 dealing with the alleged breach of implied warranty because the agreement negated any implied warranty and as to Count 4, the alleged violation of the Georgia Motor Vehicle Sales Finance Act, because Nash's failure to sign the installment sales agreement as seller as required by that Act was inadvertent rather than wilful. The trial court granted Nash partial summary judgment as moved, and Ms. Troutt brings this appeal, enumerating those grants as error. *Held:*

1. In her first enumeration of error, Ms. Troutt argues that under the circumstances, paragraph 7 of the installment sales agreement did not nullify the implied warranty as to merchantability and fitness. Her argument is that Nash's issuance of an odometer statement in compliance with the "Federal Odometer Act" (15 USC § 1987 et seq.) constituted a statement of warranty as to the "new" condition of the Concord. Additionally, she argues that the efforts and promises by Nash to effect warranty repairs constituted a "service" agreement entered into between the parties within 90 days of the execution of the installment sales agreement. It is her contention that by its own wording, the exceptions of paragraph 7 of the installment sales agreement wherein it relates to denial of an implied warranty as to merchantability and fitness for the purpose intended are brought into play by the facts contained in her pleadings and affidavit.

Code Ann. § 109A-2—316 expressly authorizes a seller to negate an implied warranty of merchantability by a conspicuous writing denying implied merchantability. Ms. Troutt admits that paragraph 7 of the agreement meets the requirements of conspicuousness. Moreover, she does not contend that paragraph 7 would not otherwise negate merchantability except for the presence of a warranty and service agreement. Our problem lies in Ms. Troutt's contention that there is evidence of a "service agreement" or that an odometer statement filed in compliance with a totally unrelated federal statute is a warranty.

Ms. Troutt contends that her statement contained in an affidavit submitted in opposition to Nash's motion for summary judgment indicates the existence of a service contract. That

statement in effect says that before the sale of the car, Nash's agent promised that if there were any problems with the car, Nash would take care of them and that after the problems had developed, she relied upon Nash's further promises to fix the car. Nash offered no evidence as to the existence or non-existence of such promises other than a general denial in its pleadings.

Code Ann. § 109A-2—202 provides: "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

In the case sub judice, the installment sales contract, in paragraph 10 states: "10. No modification of any of the terms or conditions hereof shall be valid . . . and the buyer expressly waives the right to rely thereon, unless made in writing duly executed by the seller."

Even assuming that the oral promises made before and after the execution of the sales contract amounted to an agreement to enter into a service contract, this evidence of oral promises was not competent to modify the express written warranty disclaimer set out in paragraph 7 of the same agreement. See *Lyon v. Patterson,* 138 Ga. App. 816, 820 (227 SE2d 423); *Cooper v. Vaughan,* 81 Ga. App. 330, 337 (58 SE2d 453). Accordingly, the trial court correctly concluded that there was no competent evidence of an independent service contract as an exception to the written implied warranty disclaimer in paragraph 7 of the sales agreement.

Moreover, we do not accept Ms. Troutt's contention that the odometer statement is an express warranty. The sales agreement states on its face that the car is "new." Whether a vehicle is "new" because it has more or less than a certain number of miles on the odometer is not argued by either party. Nor does Ms. Troutt argue that the statement that the car has a designated number of miles on the odometer is false or incorrect. Nor does she connect the odometer statement in any way to the mechanical difficulties experienced with the car.

An odometer statement is required by 15 USC § 1988 et seq. The sole purpose of that statement is to prevent odometer tampering by imposing civil penalties. Stier v. Park Pontiac, 391 FSupp. 397 (D. C. W. Va.) (1975). On the other hand the implied warranties

contemplated by paragraph 7 of the sales agreement deal with merchantability and fitness for purpose. We conclude that it is an illogical extension to include within the concept of a "warranty" for merchantability or fitness for purposes intended a statement of mileage required by an unrelated statute and absent any showing that the statement of mileage is incorrect and/or connection to the injuries suffered.

In this case, there is no dispute as to any question of fact. The trial court was required solely to interpret the provisions of the sales agreement. The construction of contracts is a question of law for the court. *Village Enterprises v. Ga. R. Bank &c. Co.,* 117 Ga. App. 773 (1) (161 SE2d 901). In view of our determination as to the legal effect of Nash's oral promises and of the odometer statement, there are no genuine issues as to any material fact in relation to Count 2. The purpose of the summary judgment act is to eliminate the necessity for trial by jury, where giving the opposing party the benefit of all reasonable doubt and all favorable inferences that may be drawn from the evidence, there is no genuine issue of fact. Nash was entitled to judgment as a matter of law. *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173); *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442).

2. The second enumeration of error argues that Nash's failure to sign the installment agreement violates the Georgia Motor Vehicle Sales Finance Act. Code Ann. § 96-1003 (a) provides: "(a) a retail installment contract shall be in writing, shall be signed by both the buyer and the seller. . . ." Ms. Troutt argues that the issue of whether Nash inadvertently or wilfully failed to sign the agreement is a jury question and for that reason alone the grant of summary judgment as to Count 4 was error. Contrariwise, Nash argues that the face of the document shows that the agreement was filled out in all respects and all that is omitted was a written signature by an agent of Nash. Moreover, Nash seeks to circumvent the question of whether the absence of a written signature was wilful or inadvertent by arguing that the document is, within contemplation of law, in fact signed.

Code Ann. § 109A-1—201 (39) states: " 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." Though this count is filed under the Vehicle Sales Finance Act and not under the UCC, we find precedential value in the above definition of "signed" as it relates to the requirement that an installment sales contract be "signed" by both the seller and the buyer. In this case it is not disputed that the vehicle was purchased by Troutt and sold by Nash, with possession transferring hands by virtue of the sales agreement as the underlying authority for the sale. Ms. Troutt relies on the provisions of the agreement in the

bringing of this lawsuit. It is clear that the parties accept the document as binding as to each other. Only its interpretation is in question. Thus at the time the document was delivered to Ms. Troutt, it reasonably can be argued that Nash authenticated the agreement by identifying itself as the seller on the face of the document.

It has been held: "As to the issue of whether it was 'signed,' U. C. C. § 1-201 (39) (Code Ann. § 109A-1—201 (39)) defines the term as including any symbol executed or adopted by a party with present intention to authenticate a writing. On the bill of sale and warranty of title were printed the words 'Phoenix Auto Auction.' A complete signature is not necessary to constitute an authentication as it may be printed and may be on any part of the document including a billhead or letterhead. *Kohlmeyer & Co. v. Bowen,* 126 Ga. App. 700 (192 SE2d 400)." *Evans v. Moore,* 131 Ga. App. 169, 170 (205 SE2d 507); see also *Peoples Bank v. Northwest Ga. Bank,* 139 Ga. App. 264 (228 SE2d 181).

In the case sub judice the sales agreement consists of Nash's standard printed form with various labeled blank spaces or blocks where the appropriate information with regard to the transaction has been typed. At the top of the form Nash's company name, address and other information appears. Because the evidence is direct and uncontroverted that Nash took this form, completed it with details and terms of the contract and delivered the completed agreement to Ms. Troutt, a finding would have been authorized if not demanded that Nash adopted its typed name at the top of the form with present intention to authenticate the writing and that the writing would be sufficient against Nash under UCC § 1-201 (39). *Kohlmeyer & Co. v. Bowen,* supra, pp. 704-705. We confirm this finding by the trial court and the grant of summary judgment as to Count 4 that flows therefrom.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 6, 1981.

*Gary R. Yates,* for appellant.
*W. Howard Fowler, Donald M. Fain, Harold B. Thompson, Charles M. Shaffer, Jr.,* for appellees.