721 P.2d 1302

**Tim WATSON, individually and as President of Tim Watson, Inc., a New Mexico corporation, Plaintiff-Appellee and Cross-Appellant,**

v.

**TOM GROWNEY EQUIPMENT, INC., a New Mexico corporation, Defendant-Appellant and Cross-Appellee.**

No. 15869.

Supreme Court of New Mexico.

July 21, 1986.

Rehearing Denied Aug. 12, 1986.

Downes & Comeau, Stephen P. Comeau, Albuquerque, for defendant-appellant and cross-appellee.

Koch & Jones, Thomas Nance Jones, Jeffrey J. Dempsey, Albuquerque, for plaintiff-appellee and cross-appellant.

## OPINION

SOSA, Senior Justice.

Tim Watson, Inc., (Watson) brought suit for breach of contract against Tom Growney Equipment, Inc., (Growney) for Growney's failure to deliver to Watson a backhoe allegedly purchased by Watson. The district court granted partial summary

judgment in favor of Watson on the issue of liability. A trial was subsequently held on the issue of damages and the district court established the amount of damages in favor of Watson. Growney appeals and Watson cross-appeals. We affirm on the appeal and reverse on the cross-appeal.

**FACTS**

Watson's representative, Dee Corley (Corley), went to Growney shopping for a backhoe. Corley met with Growney's sales manager, Jim Baker (Baker), and discussed the purchase of a John Deere 500C backhoe.

Baker asked Bob Nemec (Nemec), one of Growney's sales representatives, to show Corley the backhoe. Corley and Nemec went out to the yard to inspect the backhoe and then returned to Baker's office. There, Corley and Baker negotiated the purchase price of the backhoe. Baker wrote the figure $15,818.65 on a piece of paper and passed it to Corley. This figure represented a cash price for the backhoe. Corley reacted favorably to the offered price and informed Baker and Nemec that he would discuss it with Watson who would contact them regarding the purchase.

Later that day, Watson contacted Nemec to finalize the deal. In a subsequent telephone conversation, Nemec told Watson that the deal had been approved and all that was necessary was Watson's signature. Watson went to Growney late in the afternoon and signed the necessary papers, but the papers were never signed by the authorized person at Growney.

The backhoe was never delivered to Watson by Growney. Upon inquiry, Corley was told by Growney that the backhoe had been sold to another purchaser. Watson was later told that the quoted cash price of $15,818.65 was erroneous and this was the reason for non-delivery.

A few days after non-delivery, Watson rented (with an option to purchase) a smaller backhoe from Growney. Watson purchased this backhoe from Growney approximately three months later. Watson subsequently filed this lawsuit for breach of contract on the sale of the 500C backhoe. Growney denied there was a contract.

The district court concluded that Watson's subsequent purchase of the smaller backhoe from Growney was not a "cover" transaction under the Uniform Commercial Code, Section 55–2–712 (statutory references are to NMSA 1978 (Cum.Supp.1985)). However, in calculating Watson's damages for Growney's breach of the original agreement, the district court awarded what appears to be cover damages.

The issues are whether the district court properly granted partial summary judgment on the question of liability and whether the district court properly measured damages awarded to Watson.

On appeal Growney argues that the district court erred when it granted partial summary judgment on the issue of liability in favor of Watson. Growney alleges that the various issues of fact still remaining which would render the district court's order of summary judgment erroneous are: (1) whether Nemec intended the purchase order and invoice signed by Watson to create a binding contract with Growney for the sale of the backhoe without prior approval of his superiors; (2) whether Nemec and Baker had authority to enter into the contract for sale without prior approval of their superiors; (3) whether the purchase order was "signed" by Growney so that it indicates a present intention to authenticate the writing under Section 55–1–201(39); and (4) whether Nemec and/or Baker informed Corley regarding the necessity for prior approval by their superiors before the contract of sale could be completed.

Summary judgment is proper where no material disputed issue of fact exists. *Smith v. Price's Creameries, Division of Creamland Dairies, Inc.,* 98 N.M. 541, 650 P.2d 825 (1982). Growney argues on appeal that the various questions presented above are sufficient to defeat the district court's granting of summary judgment on the issue of liability. We disagree.

As to the question of whether Nemec and Baker had authority to enter into the contract for sale without prior approval of their superiors, the facts show that both Nemec and Baker had at least apparent authority to enter into the contract with Watson. Further, even if Nemec did not intend the purchase order and invoice signed by Watson to create a binding contract without the prior approval of his superiors, nonetheless the evidence indicates that Watson was subsequently informed by Nemec (who had apparent authority to make such representation) that approval had been granted.

We have reviewed the record on appeal and have not found, in either the depositions or the affidavits presented for and against the motion for summary judgment, any evidence disputing Watson's claim that he was told by Nemec that approval had been granted. At best the record reveals that Nemec *may have* told Corley that prior approval would be necessary to consummate the deal. However, this in no way negates the undisputed fact that Watson was later informed by Nemec that the necessary approval had indeed been obtained. Thus, the questions of whether Corley was told that prior approval was necessary and Nemec's intent are immaterial.

Further, Growney argues on appeal that the issue of whether the purchase order was "signed" also created a genuine issue of material fact which should have barred the granting of summary judgment. However, the purchase order was completely filled in with all relevant information regarding the backhoe to be purchased by Watson. Contained in the purchase order is a description of the equipment to be sold, the full purchase price, approximate delivery date, Growney's address, Watson's address, a signature line for Watson as the purchaser on which Watson's name is typed in and, an acceptance line for Growney as the seller on which Growney's name is also typed in. Only the date of acceptance and the salesman's signature line are left blank. Growney argues that since these lines were left blank it negates that there was any present intention to authenticate the purchase order. However, such information as is contained in the purchase order here has been held sufficient evidence of present intention to authenticate a writing. In *Troutt v. Nash AMC/Jeep, Inc.*, 157 Ga.App. 399, 403, 278 S.E.2d 54, 58 (1981), it was stated:

[T]he sales agreement consists of Nash's standard printed form with various labeled blank spaces or blocks where the appropriate information with regard to the transaction has been typed. At the top of the form Nash's company name, address and other information appears. Because the evidence is direct and uncontroverted that Nash took this form, completed it with details and terms of the contract and delivered the completed agreement to Ms. Troutt, a finding would have been authorized if not demanded that Nash adopted its typed name at the top of the form with present intention to authenticate the writing and that the writing would be sufficient against Nash under UCC § 1–201(39).

The circumstances of the instant case regarding the authentication of the purchase order are virtually identical to the circumstances in *Troutt v. Nash.* By filling in all of the details on the purchase order and presenting it for Watson's signature, Growney exhibited its present intention to authenticate the purchase order.

In light of the foregoing analysis regarding the questions of prior approval and present intention to authenticate, we determine that no genuine issue of any disputed material fact existed when the district court granted summary judgment. Therefore, the granting of a partial summary judgment on the issue of liability was correct. *Sweenhart v. Co-Con, Inc.*, 95 N.M. 773, 626 P.2d 310 (Ct.App.), *cert. denied*, 95 N.M. 669, 625 P.2d 1186 (1981).

We next address the measure of damages awarded by the district court to Watson. Growney argues that Watson is precluded under the Uniform Commercial Code from collecting damages suffered by

the breach of contract. Growney contends that Watson should only be awarded cover damages under Section 55–2–712. However, this section states that a buyer *may* seek cover for a purchaser's breach. It is not mandated that a buyer cover for a breach of contract. In fact, under Subsection 55–2–712(3) it is specifically stated that "[f]ailure of the buyer to effect cover within this section does not bar him from any other remedy." Watson was free to seek damages under Section 55–2–713.

Growney alleges that Watson's subsequent purchase of a smaller backhoe from Growney, after Growney's breach, is evidence that the subsequent purchase was indeed a cover and, therefore, the district court erred in awarding Section 55–2–713 damages to Watson. However, upon a review of the record on appeal, we have been unable to find any evidence supporting Growney's contention. In fact, during oral arguments, Growney's counsel admitted that the evidence was uncontroverted that there was no discussion that the subsequent purchase by Watson of the smaller backhoe was done in settlement of a possible pending lawsuit regarding the breach of contract or was in any way understood by Watson to be a cover for the prior breach. Therefore, we disagree with Growney's contention on appeal and hold that the district court was correct in finding that Watson was entitled to damages under Section 55–2–713. However, on cross-appeal Watson has sought to correct what appears to be an incorrect calculation of those damages. Under Section 55–2–713 the correct measure of damages is the fair market value of the original backhoe minus the contract price. Here the fair market value of the first backhoe was $31,500.00. The contract price for the backhoe was $15,818.65, a difference of $15,681.35. However, the district court awarded to Watson the sum of $10,681.35. This amount is erroneous. We therefore reverse the district court on the measure of damages and remand for an appropriate calculation of damages as set forth in Section 55–2–713.

IT IS SO ORDERED.

FEDERICI and WALTERS, JJ., concur.

STOWERS, J. (Dissenting)

I dissent from the Majority Opinion insofar as it affirms the trial court's grant of summary judgment in favor of Watson on the issue of liability.

In my opinion there exists a genuine issue of material fact which would preclude the issuance of summary judgment.

As we have previously stated, summary judgment is an extreme remedy which should yield to a trial on the merits if, after resolving all reasonable doubts in favor of the opponent of the motion, the evidence adduced at the hearing establishes the existence of a genuine issue as to any material fact. *Peoples State Bank v. Ohio Cas. Ins. Co.*, 96 N.M. 751, 635 P.2d 306 (1981). When a genuine issue of material fact exists, summary judgment is improper. NMSA 1978, Civ.P.R. 56 (Repl.Pamp.1980).

Mr. Nemec, Growney Equipment's salesperson and representative, specifically denied any intent to enter into a valid and enforceable contract at the time Mr. Watson signed the sale documents. Mr. Nemec's Affidavit in support of Defendant's Response To Motion For Summary Judgment properly raises this issue. There was, therefore, a genuine issue of material fact to be decided by the trial court. For these reasons, I respectfully dissent.