76 P.3d 977

Brian KELLER and Clarice Keller, husband and wife, d/b/a Adcope L.L.C., an Idaho Limited Liability Company, Plaintiffs–Respondents,

v.

INLAND METALS ALL WEATHER CONDITIONING, INC., a Washington corporation, Defendant–Appellant.

No. 26246.

Supreme Court of Idaho, Boise, April 2002 Term.

Aug. 29, 2003.

Edwin L. Litteneker, Lewiston, for appellant.

Clark & Feeney, Lewiston, for respondents. Paul T. Clark argued.

EISMANN, Justice.

This is an appeal from the award of damages for the breach of a warranty of fitness for a particular purpose in the sale of a dehumidifier for an athletic club. We affirm the judgment as modified.

## I. FACTS AND PROCEDURAL HISTORY

The defendant-appellant Inland Metals All Weather Conditioning, Inc. (Inland Metals) is a heating, ventilation, and air conditioning contractor located in Clarkston, Washington. From January 1991 to July 1999, the plaintiffs-respondents Brian and Clarice Keller owned and operated a business known as Adcope Athletic Club located in Lewiston, Idaho. They conducted their business in leased premises. On July 1, 1999, the Kellers sold the athletic club to Adcope L.L.C.

In December 1995 the Kellers extensively remodeled the building in which they operated their athletic club, including replacing the aboveground swimming pool with a below-ground pool. Once the remodeling was completed and the club reopened in January 1996, the Kellers began receiving complaints from their customers that the air in the pool area was hot, humid, and had a bad odor.

Seeking to remedy the odor and humidity problems, in November and December 1996 the Kellers solicited and received bids from two heating, ventilation, and air-conditioning contractors. Inland Metals submitted a bid to sell and install a 7½-ton dehumidifier at a total cost of $30,081.00, and the other contractor submitted bids to sell and install a 10-ton dehumidifier at a total cost of $40,740.00 or a 12-ton dehumidifier at a total cost of $39,300.00. After a period of continued discussions with representatives of Inland Metals, on March 11, 1997, Mr. Keller accepted its bid to install the 7½-ton dehumidifier. Inland Metals installed the dehumidifier on June 20, 1997. At the time of the installation, the Kellers were out of town. Upon their return on July 2, 1997, their employees informed them that the dehumidifier was not working well. The Kellers informed Inland Metals that they would not pay for the dehumidifier until it was working properly. In response to complaints during the ensuing months, Inland Metals employees visited the club many times, but they were unable to make the dehumidifier perform to the Kellers' satisfaction.

On October 30, 1997, Adcope L.L.C. filed this action seeking to rescind the contract with Inland Metals and to recover damages. Inland Metals counterclaimed to foreclose its mechanic's lien. The case was tried to the district court, and it found that Inland Metals had breached express and implied warranties that the dehumidifier was fit for its intended purpose and that the Kellers had timely rejected the dehumidifier. It awarded the Kellers[1] damages in the sum of $13,452.00 plus costs and attorney's fees totaling $74,400.28 and denied Inland Metals any recovery on its counterclaim. Inland Metals then timely appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in finding that Inland Metals breached a warranty of fitness for a particular purpose?

B. Did the district court err in finding that the Kellers rightfully rejected the dehumidifier?

C. Did the district court err in awarding damages?

D. Did the district court err in finding that the Kellers were the prevailing party?

---

1. The complaint named Adcope L.L.C. as the plaintiff, and it remained the named plaintiff until entry of the judgment prepared by counsel for the Kellers. The judgment listed Brian and Clarice Keller, d/b/a Adcope L.L.C., as the plaintiffs.

E. Did the district court err in failing to award Inland Metals damages equal to the contract price of the rightfully rejected dehumidifier?

F. Is either party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

 A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 39 P.3d 588 (2001); IDAHO R. CIV. P. 52(a). When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. *Id.* It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Rowley v. Fuhrman*, 133 Idaho 105, 982 P.2d 940 (1999). On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial, competent evidence. *Id.* Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 39 P.3d 588 (2001).

### A. Did the District Court Err in Finding that Inland Metals Breached a Warranty of Fitness for a Particular Purpose?

 The district court found that a letter dated January 28, 1997, sent by the president of Inland Metals to Mr. Keller created an express warranty of fitness for a particular purpose in the sale of the dehumidifier. In that letter, Inland Metals' president stated:

As you already know the air in your pool area is very stale and offends the eyes and throat because of the elements in the air. Mr. Ash pointed out that although you do have a wonderful remodeled pool, the job was just never totally completed. As in any indoor pool, the air needs to be treated with outdoor fresh air, dehumidified, air conditioned in the summer, and heated in the winter. This ducted system will rid you of the sweating walls, (that will by the way eventually ruin the structure), and eliminate those offensive odors, and overall "bad air". This is not an uncommon problem, and all commercial pool owner's [sic] face the same thing until they install one of these systems.

Once you complete this installation your air problems should be over, and your customer's [sic] should be satisfied and happy.

Inland Metals contends on appeal that the letter cannot constitute an express warranty because it did not contain an affirmation of fact or promise, but was merely puffery. Whether or not the letter created an express warranty must be determined by considering the circumstances in which the statements in the letter were made.

In an attempt to remedy the odor and humidity problems, Mr. Keller solicited and received bids from two heating, ventilation, and air-conditioning contractors. Inland Metals submitted a bid to sell and install a 7½-ton dehumidifier at a total cost of $30,081.00. The other contractor submitted bids to sell and install a 10-ton dehumidifier at a total cost of $40,740.00 or a 12-ton dehumidifier at a total cost of $39,300.00. Before Inland Metals had submitted its bid, its president visited the athletic club and discussed the humidity and odor problems with Mr. Keller.

Upon receiving the bids, Mr. Keller again contacted the president of Inland Metals because he was concerned that Inland Metals had recommended a 7½-ton dehumidifier and the other contractor had recommended at least a 10-ton dehumidifier. He wanted to make sure that the dehumidifier recommended by Inland Metals was of sufficient size to take care of the problems. In response, Inland Metals' president arranged to meet with Mr. Keller and to have Jim Ash, a representative of the manufacturer of the dehumidifier listed in Inland Metals' bid, also attend that meeting. He wanted Mr. Ash to reassure Mr. Keller that the 7½-ton dehumidifier was the proper size, and Mr. Ash did so. Following that meeting, Inland Metals' president sent Mr. Keller the letter quoted above. Based upon the representations by Inland Metals' president, including those in the above-quoted letter, Mr. Keller accepted Inland Metals' bid for the 7½-ton dehumidifier on March 11, 1997.

 An express warranty by the seller can be created by any affirmation of fact or

promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain. IDAHO CODE § 28–2–313(1)(a) (2001). In order to create an express warranty, the seller need not use formal words such as "warrant" or "guarantee," nor need the seller have a specific intention to make a warranty. IDAHO CODE § 28–2–313(2) (2001). An express warranty is not created by a seller's mere affirmation of the value of the goods or statement purporting to be merely the seller's opinion or commendation of the goods. *Id.; Jensen v. Seigel Mobile Homes Group,* 105 Idaho 189, 668 P.2d 65 (1983). Whether a statement by the seller was an express warranty is a question of fact. 67A AM. JUR.2d *Sales* § 729 (1985).

The issue Mr. Keller wanted addressed at the meeting did not concern the value of the 7½-ton dehumidifier, or its quality, or whether it was better than those from other manufacturers, or whether that particular brand was, in general, a good dehumidifier. The issue Mr. Keller wanted addressed was whether a 7½-ton dehumidifier was large enough to remedy the odor and humidity problems in the athletic club. Inland Metals' president and Mr. Ash both orally assured Mr. Keller that, based upon calculations made, the 7½-ton dehumidifier was large enough to remedy the problems. In the above-quoted letter sent after the meeting, Inland Metals' president stated, "This ducted system will rid you of the sweating walls, (that will by the way eventually ruin the structure), and eliminate those offensive odors, and overall 'bad air.' " There was substantial, competent evidence supporting the district court's finding that Inland Metals made an express warranty that the 7½-ton dehumidifier was fit for the particular purpose of eliminating the odor and humidity problems at the athletic club.

█ Inland Metals also argues that the district court erred in finding that the Kellers relied upon the representations made by its president when deciding to accept Inland Metals' bid. It argues that the evidence shows that the Kellers relied upon statements by Mr. Ash and purchased the least expensive of the dehumidifiers offered. "[T]he buyer of goods need not *rely* on an 'affirmation of fact or promise' or 'descrip-

tion' for the same to become 'part of the basis of the bargain' and hence an express warranty." *Jensen v. Seigel Mobile Homes Group,* 105 Idaho 189, 195, 668 P.2d 65, 71 (1983) (emphasis in original).

Finally, Inland Metals contends that the district court erred in finding that it breached the express warranty. It argues that any failure of the dehumidifier resulted from the Kellers' failure to maintain the air temperature in the pool area two to four degrees higher than the water temperature, as anticipated by the manufacturer of the dehumidifier.

The primary issue in the trial was whether the dehumidification system failed to properly maintain humidity because it was too small or because the Kellers failed to maintain the air and water temperatures within the appropriate range. The trial court found, based upon the evidence presented, that the 7½-ton dehumidifier was inadequate to maintain relative humidity in the pool area according to the industry standard and that the persons upon whom Inland Metals had relied when sizing the dehumidifier had made numerous incorrect assumptions when making their calculations. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Rowley v. Fuhrman,* 133 Idaho 105, 982 P.2d 940 (1999). The district court's finding that Inland Metals breached the express warranty is supported by substantial, competent evidence. Because we have upheld the findings that Inland Metals breached the express warranty, we need not address whether there was also an implied warranty of fitness for a particular purpose.

**B. Did the District Court Err in Finding that the Kellers Rightfully Rejected the Dehumidifier?**

█ If the goods fail in any respect to conform to the contract, the buyer may reject them. IDAHO CODE § 28–2–601(a) (2001). The rejection must occur within a reasonable time after delivery and is ineffective unless the buyer seasonably notifies the seller. IDAHO CODE § 28–2–602(1) (2001). Where the parties have not agreed upon a time within which an action must be taken, it

is taken "seasonably" if it is taken within a reasonable time. IDAHO CODE § 28–1–204(3) (2001). What constitutes a reasonable time within which the buyer must inspect the goods and determine if they are conforming is a question of fact. *Figueroa v. Kit–San Co.*, 123 Idaho 149, 845 P.2d 567 (Ct.App. 1992). A buyer can be held to have accepted goods if the buyer fails to make an effective rejection after a reasonable time and opportunity to inspect the goods, or does any act inconsistent with the seller's ownership. IDAHO CODE § 28–1–204(3) (2001).

■ Inland Metals argues that the Kellers delayed longer than reasonable before rejecting the dehumidifier. As the district court found, the Kellers needed to operate the dehumidifier in the athletic club to determine whether it conformed to the express warranty that it was fit for that particular purpose. Four days after the unit was installed, one of the Kellers' employees notified Inland Metals the dehumidifier was not working properly. After the Kellers returned from their vacation, Ms. Keller notified Inland Metals that if the problems could not be corrected, it should remove the unit. On July 17 and August 11, 1997, the Kellers' attorney wrote to Inland Metals demanding that the problems be corrected. Finally, on October 30, 1997, Adcope L.L.C. filed its complaint in this action, in which the Kellers formally notified Inland Metals that they were rejecting the dehumidifier. In response to complaints following the installation of the dehumidifier, Inland Metals employees made numerous visits to the athletic club, made some occasional minor adjustments to the unit, and made repeated assurances that it was operating properly.

When deciding what was a reasonable time for the inspection and rejection, the district court considered the four factors listed in *Figueroa v. Kit–San Co.*, 123 Idaho 149, 158, 845 P.2d 567, 576 (Ct.App.1992), which are: "(1) the difficulty in discovering the defect; (2) the terms of the contract; (3) the relative perishability of the goods; and (4) the course of performance after the sale and before the formal rejection." The district court also considered that the period for rejecting nonconforming goods can be extended if, after giving notice of the nonconformity, the buyer retains and uses them on the understanding

that the seller will cure the nonconformity. 67 AM. JUR.2d *Sales* § 649 (1985). The district court's finding that the rejection in this case occurred within a reasonable time after delivery is supported by substantial, competent evidence.

■ Inland Metals also argues that by continuing to use the dehumidifier and by having Inland Metals' competitor make adjustments to it in an attempt to improve its performance, the Kellers accepted the dehumidifier because such conduct was inconsistent with Inland Metals' ownership. "[A] buyer may use goods without accepting them if the use is a reasonable attempt to mitigate damages." *Figueroa v. Kit–San Co.*, 123 Idaho 149, 158, 845 P.2d 567, 576 (Ct.App. 1992). When Inland Metals installed the 7½-ton dehumidifier, it removed the existing 5–ton dehumidifier. The district court found that after the Kellers rejected the dehumidifier, Inland Metals did not seek to remove it, and the Kellers could not remove it themselves. It also found that had the Kellers simply turned the dehumidifier off, humidity would have increased in the pool area to the point of causing physical and structural damage to the club facilities and the increased humidity would have been so uncomfortable that customers would no longer use the pool. The district court concluded that the Kellers' continued use of the dehumidifier was necessary to mitigate its damages and was not an act inconsistent with Inland Metals' ownership. That finding is supported by substantial, competent evidence.

## C. Did the District Court Err in Awarding Damages?

When a buyer rightfully rejects goods, the buyer may:

(a) recover so much of the purchase price as the buyer has paid, IDAHO CODE § 28–2–711(1) (2001); and

(b) **either** cover and recover as damages the difference between the cost of cover and the contract price, less expenses saved as a consequence of the seller's breach, IDAHO CODE §§ 28–2–711(1)(a) & 28–2–712(2) (2001), or recover as damages the difference between the market price at the time the buyer learned of the breach and the

contract price, less expenses saved as a consequence of the seller's breach, IDAHO CODE §§ 28-2-711(1)(b) & 28-2-713 (2001); and

(c) recover any incidental or consequential damages, IDAHO CODE §§ 28-2-711(1), 28-2-712(2), 28-2-713(1), & 28-2-715 (2001); and

(d) resell the goods as an aggrieved seller in order to recover any portion of the price paid and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody, IDAHO CODE § 28-2-711(3) (2001).

In this case, the Kellers had not paid any portion of the purchase price, they did not cover, nor did they resell the goods as an aggrieved seller. They were entitled to recover as damages: (a) the difference between the market price at the time they learned of the breach and the contract price, less expenses saved as a consequence of Inland Metals' breach and (b) any incidental or consequential damages.

**█ 1. Did the district court err in awarding as damages the difference in cost between the 7½-ton dehumidifier and a 10–ton dehumidifier?** The district court awarded as damages the sum of $10,659.00, which represents the difference in price between the 7½-ton dehumidifier installed by Inland Metals and the 10–ton dehumidifier bid by the other contractor. The district court erred in awarding such sum.

The damages recoverable include "the difference between the market price at the time when the buyer learned of the breach and the contract price." IDAHO CODE § 28-2-713(1) (2001). The issue is what is meant by "market price"? Is it the market price of the goods specified in the contract or the market price of some other, more expensive goods? This Court has frequently given substantial weight to the comments to the official text of the UCC when determining the meaning of the statute. *Walker v. American Cyanamid Co.,* 130 Idaho 824, 948 P.2d 1123 (1997). Comment 2 to the official text of Idaho Code § 28-2-713 states:

The market or current price to be used in comparison with the contract price under this section is the price of goods of the same kind and in the same branch of trade.

The market price mentioned in Idaho Code § 28-2-713(1) is the price of goods "of the same kind." In this case, goods of the same kind would be a 7½-ton dehumidifier as specified in the parties' contract.

There is a significant difference between contracting for a fixed price to sell and install equipment that the seller represents will produce a specific result and contracting for a fixed price to attain that specific result regardless of the equipment or labor necessary to do so. In this case, Inland Metals submitted a bid to remove the existing dehumidifier and to install a 7½-ton dehumidifier for the sum of $30,081.00. The bid stated:

We are pleased to present to you this proposal for installing a DESERT AIR Model De–Humidifier Air Conditioning System in the Swimming Pool area at Adcope located at the above address.

Installation will consist of the following:

Removal of teh [sic] existing 500 unit.

Install a IH–750RR (Larger Unit) in its place.

Wiring of the unit.

Install complete overhead duct system (All Aluminum Duct).

Install 10 Shoemaker 950VM 12 × 6 Aluminum Supply Air Diffusers.

Install Outdoor Fresh Air.

Units include full controls, deactivator filters, discharge electric duct heater and remote condenser.

Install a 7½ Ton Outdoor Condensing Unit.

Refrigeration Piping.

Wiring of the unit.

Necessary Permit.

Material and Labor to install the above system.

Inland Metals also later warranted that the 7½-ton dehumidifier would be fit for the particular purpose. The district court found, "On March 11, 1997, Brian Keller accepted [Inland Metals'] proposal for installing a 7½-ton unit." The district court did not find that Inland Metals agreed, for $30,081.00, to provide whatever equipment and labor was necessary to eliminate the odor and humidity problems in the pool area.

When a buyer rightfully rejects goods, the buyer can either cover and recover as damages the difference between the cost of cover and the contract price or recover as damages

the difference between the market price and the contract price. These are alternative remedies intended to place the buyer in the same position. As stated in comment 3 to the official text of Idaho Code § 28-2-712, "The buyer is always free to choose between cover and damages for non-delivery under the next section [Idaho Code § 28-2-713]." "The damage remedy provided by Section 2-713 ideally should yield the same recovery as the cover remedy of Section 2-712, because the cover price is simply another way of conclusively stating what the market price is." 2 WILLIAM D. HAWKLAND, UNIFORM COMMERCIAL CODE SERIES § 2-713.3 (2002). If the buyer covers by purchasing substitute goods, he must do so in good faith by making a reasonable purchase "of goods in substitution for those due from the seller." IDAHO CODE § 28-2-712(1) (2001). The goods due from the seller are those specified in the contract, which in this case is the 7½-ton dehumidifier. "[T]he buyer cannot claim he covered when he made replacement by purchasing more expensive goods than the ones called for by the original contract." 67A AM.JUR. 2D *Sales* § 1176 (1985). It would be anomalous to hold that a buyer who covers must purchase goods of the same kind, but one who instead seeks the alternate remedy of damages can recover based upon the value of different, more expensive goods.

Inland Metals agreed, for the sum of $30,081, to sell and install a 7½-ton dehumidifier, which it warranted would correct the Kellers' problems. The dehumidifier itself was not defective. It was simply not large enough to correct the odor and humidity problems. Because a 7½-ton dehumidifier was not fit for the particular purpose, the Kellers were entitled to reject the dehumidifier and recover damages. The damages recoverable by the Kellers under the Uniform Commercial Code are the difference between the market price and the contract price together with any incidental and consequential damages. IDAHO CODE § 28-2-713(1) (2001).[2] There was no contention that the market price for a 7½-ton dehumidifier of the type

described in the parties' contract was higher than the contract price for that dehumidifier.[3] Therefore, the only damages the Kellers were entitled to recover were incidental and consequential damages as defined in Idaho Code § 28-2-715. The district court's damage award must be reduced by $10,659.00.

**2. Did the district court err in awarding incidental damages?** The incidental damages that the Kellers were entitled to recover include expenses reasonably incurred in inspection, receipt, transportation and care and custody of the dehumidifier and any reasonable expense incident to the delay or breach. IDAHO CODE § 28-2-715(1) (2001). The district court awarded as incidental damages the sum of $1,092.00 for the time one of the Kellers' employees spent gathering temperature and humidity data during the period between the installation of the dehumidifier and the filing of this lawsuit and $1,001.00 for the time another employee spent transporting water samples for testing during the same time period. The damages were awarded at the employees' respective hourly rates based upon the time they spent on these tasks. The district court also awarded as incidental damages the sum of $700.00 spent to have additional testing of the water and air done in September 1997. The district court found that such expenses were reasonably incurred in inspecting the dehumidifier to establish whether it conformed to the express warranty and that they were caused by Inland Metals' breach. There is substantial, competent evidence supporting the district court's findings, and we affirm this award of damages.

**D. Did the District Court Err in Finding that the Kellers Were the Prevailing Party?**

The district court awarded the Kellers court costs, including reasonable attorney fees, in the sum of $74,400.28. On appeal, Inland Metals simply states that the Kellers should not have been the prevailing party. The determination of who is a pre-

---

2. Because the Kellers had not paid any portion of the purchase price, their damages could not include so much of the price as had been paid.

3. To recover damages based upon the difference between the market price and the contract price, the market price must be shown to be higher than the contract price. 67A AM. JUR.2d *Sales* § 1292 (1985).

vailing party is committed to the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Bolger v. Lance,* 137 Idaho 792, 53 P.3d 1211 (2002). Inland Metals has not shown an abuse of discretion in the district court's determination of the prevailing party and the resulting decision to award court costs and attorney fees.

### E. Did the District Court Err in Failing to Award Inland Metals Damages Equal to the Contract Price of the Rightfully Rejected Dehumidifier?

██ Inland Metals contends that it is entitled to recover the $30,081 contract price pursuant to Idaho Code §§ 28–2–709(3) and 28–2–708. These statutes provide for damages if the buyer has wrongfully rejected acceptance of the goods and the seller is not entitled to recover the price. They have no application in this case because the Kellers did not wrongfully reject acceptance.

### F. Is Either Party Entitled to an Award of Attorney Fees on Appeal?

██ Both parties claim attorney fees on appeal pursuant to Idaho Code § 12–120(3), which mandates the award of a reasonable attorney's fee to the prevailing party in any civil action to recover on a contract relating to the purchase or sale of goods. Because both parties have prevailed in part on appeal, we will not award attorney fees on appeal.

### IV. CONCLUSION

We reduce the damages awarded to the sum of $2,793.00, and affirm the judgment in all other respects. We do not award either costs or attorney's fees on appeal.

Justices SCHROEDER, WALTERS and KIDWELL concur.

---

4. The Court recounts in detail in Part A of its opinion how the relieving of humidity and odor in the athletic club was the underlying purpose behind the contract, and that the Kellers did not accept Inland Metal's bid until they were repeatedly assured the 7½-ton dehumidifier would accomplish this task.

5. I.C. § 28–2–313 clearly states: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the

Chief Justice TROUT, dissenting.

Because I believe the Court is misapplying the provisions of the UCC, I respectfully dissent from section C.1 of the Court's opinion.

The Court relies on Section 28–2–713 of the Idaho Code to conclude that the Kellers, who rightfully rejected a 7½-ton dehumidifier because it did not accomplish the warranted purposes for which they had contracted with Inland Metals, are entitled only to incidental and consequential damages and are not entitled to the value of the difference between the contract price of that 7½-ton dehumidifier and the market price of one that would have accomplished the purpose of the contract, as the trial court found. I believe that given the facts of this case and the language and purpose of the UCC, the Kellers are in fact entitled, according to § 28–2–713, to the additional damages found by the trial court.

The Kellers and Inland Metals came to a clear meeting of the minds as to what would constitute a "conforming good" in the language of the UCC. The Kellers simply wanted a dehumidifier that would clear the humidity and odor from their athletic club. They relied on the skill and expertise of Inland Metals to determine what size dehumidifier would be required to accomplish this task. After making its own calculations and determinations, Inland Metals submitted a bid to install a dehumidifier that it expressly warranted would meet the Kellers' needs.[4] The Kellers rightfully regarded the underlying purpose of the contract—that the dehumidifier would solve the humidity problems in their athletic club—as the basis of the bargain.[5] When, after delivery, the Kellers saw

affirmation or promise; (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. *See also* Comment 1 to the Official Text (" 'express' warranties rest on 'dickered' aspects of the individual bargain, and go so clearly to the essence of that bargain . . ."). This principle is so weighted that disclaimers and other language tending to null an express warranty are "repugnant to the basic dickered terms" and are found inoperative unless they can be reconciled to the basis of the bargain. *Id.; See also* I.C. § 28–2–316(1); *Jen-*

that this dehumidifier was not accomplishing the requirements of the contract, they rightfully rejected, as the Court's opinion indicates.

However, the Court bases its decision to reduce the trial court's damages award on a reading of § 28–2–713 that entirely disregards the basis of the bargain. This Court finds that the market price under § 28–2–713 can only be the going price of a 7½-ton dehumidifier and not the cost of the dehumidifier Inland Metals warranted it would deliver. This logic excludes from consideration the fact that the whole purpose of §§ 28–2–713, 28–2–712, and 28–2–711—all sections upon which the Court relies—is to allow the buyer to put himself in as good a position as if the buyer had received the benefit of the bargain.[6]

By severing the underlying purpose of the contract and, instead, focusing only on the value of the 7½-ton dehumidifier simply because it is listed in the written contract, the Court obviates the need to enter into this analysis in the first place. If all the parties had contracted for was a 7½-ton dehumidifier, and if all Inland Metals had been required to provide was a 7½-ton dehumidifier, then the Kellers would have been wrong in the first place to reject such goods and Inland Metals should have prevailed below and on appeal.[7] The Court's opinion finding that there was a breach of an express warranty is a direct contradiction to the later conclusion that the Kellers received the only thing to which they were entitled, a 7½-ton dehumidifier.

The underlying policy behind the buyer's remedies in the above-cited sections is to give the buyer an opportunity to receive the benefit of the bargain. The UCC operates on the principle of expectation damages as evinced by these and other provisions.[8] One of the clearest manifestations of this is the option of cover, which the Court ironically relies upon greatly in its reasoning. The Court's opinion cites Hawkland in explaining that the damage remedy provided by Section 2–713 "ideally should yield the same recovery as [cover] ... because the cover price is simply another way of conclusively stating what the market price is." I would readily agree with this principle, and applying it to the facts of this case, had the Kellers covered, they would have purchased a 10 ton dehumidifier—one that fulfilled the requirements of their contract with Inland Metals—and obviously not a 7½-ton dehumidifier, which they already knew did not fulfill this requirement. Additionally, the Court's opinion states that if the buyer covers, he must do it by making a reasonable purchase "of goods in substitution for those due from the seller." Again I agree. Had the Kellers covered, they would undoubtedly not have purchased a 7½-ton dehumidifier, where the good *due* from Inland Metals was not simply a 7½-ton dehumidifier in and of itself but, according to their bargain, was a dehumidifier that would take care of the humidity and odor problems at the athletic club. To dismiss this fact is to negate the finding of a breach of express warranty in the first place.

Furthermore, the Court expresses a basic concern that a 10–ton dehumidifier would cost more than one that is 7½-tons, but allowing this fact to control merely excuses Inland Metals for submitting a low bid based on bad computations and estimates and does not reflect the true intent behind the principle—that if a buyer covers, he cannot purchase a good that is unreasonably beyond what he had contracted with the seller for and expect the seller to absorb the difference. In the present case, what the parties contracted for

sen v. *Seigel Mobile Homes Group*, 105 Idaho 189, 196, 668 P.2d 65, 71–72 (1983).

6. *See* I.C. § 28–1–106.

7. Where, in response to Inland Metals' appeal, this Court has analyzed the timeliness of the Kellers' rejection in Part B of its opinion, it has implicitly endorsed the reason behind the Kellers' rejection under I.C. § 28–2–601, which allows rejection only when "the goods or the tender of delivery fail in any respect to conform to the contract...." In doing so, this Court has

accepted that the 7½-ton dehumidifier was a defective good in accordance with the contract, though it acknowledges that "[t]he dehumidifier itself was not defective."

8. This point is well established in I.C. § 28–1–106: "Remedies to be liberally administered. (1) The remedies provided by this act shall be liberally administered to the end that the aggrieved party *may be put in as good a position as if the other party had fully performed ...* " (emphasis added).

was a dehumidifier that would solve the Kellers' humidity problems, and a 10-ton dehumidifier reasonably falls into that category of good.

Under the Court's reasoning, had the Kellers accepted the nonconforming dehumidifier, they would have been able to pursue the damage remedy in I.C. § 28–2–714, which would have allowed them the difference in value. Under that statutory provision, when the buyer accepts nonconforming goods, the contract remedy is the difference "between the value of the goods accepted and the value they would have had *if they had been as warranted*" (emphasis added).[9] Instead, because the Kellers were observant and prudent in the course of their business dealings and promptly rejected the nonconforming goods, they are denied that compensation here. It places a strange premium on acceptance if buyers can only get their warranties honored when they accept nonconforming goods. Rather than force buyers to accept nonconforming goods to protect their interests in enforcing a warranty, I.C. § 28–2–713 provides the same remedy when nonconforming goods are rejected and no acceptance made. In both cases, the buyer's remedy is the difference in price between what the buyer would have received if there had been no breach, and what the buyer actually received from the breaching seller. What the buyer would have received was the good as warranted. Section 28–2–713 of the Idaho Code provides this remedy and protects the buyer's expectation interest regardless of whether the buyer has rejected or accepted nonconforming goods.[10]

Finally, to award the Kellers a contract remedy for the breached warranty does not expand a seller's liability for damages beyond our State's statutory framework. To the contrary, such a remedy comports with the letter and spirit of our contract damages jurisprudence. *See* I.C. § 28–1–106 ("[R]emedies ... shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed."); I.C. § 28–2–711 cmt. 3 ("[T]his Act requires its remedies to be liberally administered."); *see also Jensen v. Seigel Mobile Homes Group*, 105 Idaho 189, 194, 668 P.2d 65, 70 (1983) ("[T]he Uniform Commercial Code requires that revocation remedies be liberally administered to put the buyer in 'as good a position as if the other party had fully performed....' "). Clearly, the buyer's expectation interest is protected through the availability of benefit of the bargain remedies. The Kellers' bargain included receiving a dehumidifier that would eliminate the odor and humidity problems in their athletic club. The fact that the size of the dehumidifier is listed in the contract should not deprive the Kellers of the warranted performance for which they bargained.

Because I believe the Court's opinion does not provide the appropriate remedies to the Kellers for the breach of warranty caused by Inland Metals, I respectfully dissent.

**9.** For a stark example of this principle of the UCC, *see Chatlos v. National Cash Register Corp.*, 670 F.2d 1304 (3rd Cir.1982). In *Chatlos*, the defendant was a computer sales company that held itself out to be an expert in computers, and after plaintiff expressed its particular computer needs defendant recommended and subsequently sold plaintiff a system that it warranted would fulfill those needs. After paying for the system and then realizing that it was inadequate in fulfilling its needs, plaintiff brought suit against defendant for breach of warranty. The court found that plaintiff was entitled to the difference in value between what it had paid for the computer it received ($46,000) and a computer that would have fulfilled its needs as warranted (over $200,000).

**10.** Several cases from other jurisdictions clearly bear this out. In *Borman's, Inc., v. Olympic*

*Mills, Inc.*, 1993 WL 190344 (S.D.N.Y.), under New York's Uniform Commercial Code § 2–713 (which is identical to Idaho's) where a buyer rejected nonconforming hand towels, the court awarded the difference between the contract price and the value of goods as they had been warranted, which difference was $89,656.86. In *Watson v. Tom Growney Equip., Inc.*, 104 N.M. 371, 721 P.2d 1302 (1986), where a tractor dealership offered a low price in a contract to sell a backhoe to the plaintiff and then refused to deliver claiming the offered price was an error, the court awarded the plaintiff the difference between the contract price ($15,818.65) and the market value of the backhoe ($31,500) on the basis of New Mexico's UCC § 2–713 (also identical to Idaho's).